# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 2146 | **DATE** | 2/4/2003 |
| **CASE TITLE** | Ronald Mount vs. Village of South Elgin, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion for summary judgment [20-1] is granted. This case is hereby dismissed.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| | Notices mailed by judge's staff. | | | FEB 0 5 2003 | |
| | Notified counsel by telephone. | | | date docketed | 33 |
| ✓ | Docketing to mail notices. | | | docketing deputy initials | |
| | Mail AO 450 form. | | | | |
| | Copy to judge/magistrate judge. | | | | |
| RO | courtroom deputy's initials | | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RONALD MOUNT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 01 C 2146 |
| v. ) | |
| ) | Judge Ruben Castillo |
| VILLAGE OF SOUTH ELGIN, POLICE ) | |
| CHIEF LARRY JONES of the Village of ) | |
| South Elgin and SGT. MICHAEL L. ) | |
| FLANINGAM, Police Officer of the Village ) | |
| of South Elgin, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Ronald Mount filed this lawsuit against the Village of South Elgin ("Village"), Police Chief Larry Jones and Sergeant Michael Flaningam (collectively "Defendants"), under 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution. Currently before this Court is Defendants' motion for summary judgment. Because Mount knowingly and voluntarily signed a separation agreement releasing Defendants from any and all liability, we grant the motion for summary judgment. (R. 20-1.)

## RELEVANT FACTS

Plaintiff Ronald Mount, a South Elgin police officer, was involved in a shooting incident on August 18, 1999. On that date South Elgin police officers attempted to arrest civilian John Bradley, who was in a vehicle near his home. Bradley resisted arrest and would not leave his vehicle, despite the officers' attempts to convince him to do so; rather, Bradley began driving away. At that time Sergeant Amy Moore was standing in front of the driver's side mirror. Mount was standing in front of the vehicle and, as the vehicle moved forward, he jumped

backwards and sideways to avoid the vehicle's path. After moving to the passenger side of the truck, Mount fired his weapon fearing that he might receive a battery and be crushed against a nearby tree. His shot hit the vehicle's tire. Bradley escaped apprehension and was arrested at a later date.

In the aftermath of the incident, the Kane County State's Attorney's Office filed criminal charges including aggravated assault and reckless driving against Bradley. The criminal complaint alleged that Bradley "nearly plac[ed] Ofc. Mount in fear of receiving a battery." (R. 24, Pl.'s Facts, Ex. 6B, Doty's Criminal Complaint.) Mount learned of the charges against Bradley on August 19, 1999.

Like Bradley, Mount faced repercussions from the incident. Chief Jones suspended Mount pending a disciplinary hearing with the Board of Fire and Police Commissioners ("Board") for the wrongful discharge of a weapon in violation of Illinois law and Village police department policy. According to the disciplinary complaint prepared by Chief Jones, Illinois law allows a police officer to use deadly force when necessary to prevent imminent death or great bodily harm. (R. 4, Am. Compl., Ex. B, Compl. and Pet. to Suspend.) Village policy also prohibits firing at a moving vehicle unless required to prevent death or great bodily harm. (*Id.*) Chief Jones' complaint alleged that neither Mount nor Moore were in a position to be injured or killed by Bradley's actions at the time Mount fired his gun. (*Id.*) Mount faced possible dismissal from his position for his actions.

Before his case reached the disciplinary board, Mount resigned from his employment with the Village on September 20, 1999. In conjunction with his resignation, he signed an employment separation agreement and release with the Village on October 11, 1999. In the separation agreement, Mount agreed to release the Village from "any and all liability of any kind

. . . arising out of or relating in any way to Mr. Mount's employment." (R. 4, Am. Compl., Ex. D, Separation Agreement.) Mount claims that he entered into the agreement because Chief Jones alleged to the Board that Mount wrongfully fired his weapon in violation of Illinois law and Village policy during the Bradley incident. He also executed the agreement to secure a neutral reference for purposes of future employment.

During the time between his resignation letter and the signing of the separation agreement, Mount consulted with a police union attorney about the release. He also called several other attorneys to discuss the charges pending against him. Mount and the police union attorney exchanged drafts of the separation agreement with the Village's attorney before the release was finalized. Mount reviewed the final separation agreement two days before signing it. His attorney advised him to read the agreement carefully since he thought Mount would not be pleased with portions of the release. Mount followed these instructions, admitting that he "tried to scrutinize [the release] very carefully." (R. 22, Defs.' Facts, Ex. A, Mount Dep. at 169.) On October 11, 1999, Mount signed the separation agreement and release. He still believed the charges against him regarding the unlawful firing of his weapon were false; he thought he was justified in firing his weapon during the Bradley incident because he believed Bradley's vehicle posed a threat to him. (R. 24, Pl.'s Facts at § 1, ¶ 27.)

On April 12, 2000, Mount learned that the criminal charges against Bradley had been amended to include Moore as an alleged victim of the incident. The amended charges alleged that Bradley placed Mount and Moore in "immediate apprehension of receiving a battery." (R. 4, Am. Compl. ¶ 19.) Mount claims that the charges in the amended criminal complaint were contradictory to Chief Jones' charges to the Board. He said that he signed the agreement not

knowing that the charges filed against him with the Board would differ from the criminal complaint against Bradley. (R. 25, Pl.'s Mem. at 5.)

On March 30, 2001, the Court dismissed Mount's original complaint without prejudice for failure to state a valid cause of action. (*See* R. 2, Mar. 30, 2001 Order.) Mount filed an amended complaint on March 14, 2002. The Village moved to dismiss the amended complaint and strike portions of it under Federal Rule of Civil Procedure 12. Defendants' motions were denied on May 31, 2002. (*See* R. 13.) The motion to dismiss the amended complaint based on the release was denied without prejudice to renewing the same arguments in a summary judgment motion. (*See id.*) Defendants currently move for summary judgment under Federal Rule of Civil Procedure Rule 56, which after careful review is hereby granted.

## LEGAL STANDARDS

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment should be granted "only if there is no reasonably contestable issue of fact that is potentially outcome-determinative." *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 436 (7th Cir. 2000). This Court will neither decide factual disputes nor weigh conflicting evidence. *Id.* Instead, this Court limits its inquiry to whether a genuine issue of material fact exists for trial. *Id.* In doing so, we view the evidence and draw all inferences in favor of the nonmoving party. A nonmoving party cannot survive summary judgment with a mere scintilla of evidence supporting his position; rather, the party must present definite, competent evidence to rebut the motion. *Id.* at 437 (*citing Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997)).

## ANALYSIS

Defendants move for summary judgment based on the separation agreement and release entered into between the Village and Mount. The agreement, if valid, would bar Mount's claims under 42 U.S.C. § 1983, and the First and Fourteenth Amendments of the United States Constitution. Defendants claim that the release is valid, while Mount argues that the release is invalid because of Defendants' improper conduct, specifically that Defendants fraudulently induced Mount into signing the release. The fraud Mount alleges is that Chief Jones represented to the disciplinary board that Mount improperly fired his weapon, while the criminal charges filed against Bradley allegedly justify his use of the weapon because he and Moore were in apprehension of receiving a battery. The motion for summary judgment thus depends on the validity of the release between Mount and the Village.

A release is valid if it was executed in a knowing and voluntary manner. *Pierce v. Atchison, Topeka and Santa Fe Ry. Co.*, 65 F.3d 562, 570 (7th Cir. 1995). As a preliminary matter, an employee who executes a release under the advice of counsel (as Mount did) is presumed to have knowingly and voluntarily signed the release, absent fraud or duress. *Riley v. Am. Family Mut. Ins. Co.*, 881 F.2d 368, 373 (7th Cir. 1989). The Seventh Circuit uses a "totality of the circumstances" test to assess whether a person knowingly and voluntarily signed a release. *Pierce*, 65 F.3d at 571. Under the *Pierce* test, the Court should analyze the following factors: (1) the employee's education and business experience; (2) the employee's input in negotiating the terms of the settlement; (3) the clarity of the agreement; (4) the amount of time the employee had for deliberation before signing the release; (5) whether the employee actually read the release and considered its terms before signing it; (6) whether the employee was represented by counsel or consulted with an attorney; (7) whether the consideration given in

5

exchange for the waiver exceeded the benefits to which the employee was already entitled by contract or law; and (8) whether the employee's release was induced by improper conduct on the defendants' part. *Id.*

The *Pierce* factors weigh heavily in Defendants' favor. Mount was an experienced police officer, familiar with the nature of the document he was signing and able to understand the ramifications of executing the release. He was represented by a police union attorney and also consulted with other attorneys before finally signing the release. Mount's attorney suggested numerous changes to the release and exchanged drafts of the separation agreement with the Village. Mount admits he was told by his attorney to read carefully the contents of the release and that he in fact did "scrutinize" the document. He had two days to consider the agreement before signing it. In addition, the release is written in a clear manner. The language of the document unambiguously states that the release discharges the Village from "any and all liability of any kind." *See Pierce*, 65 F.3d at 568 (calling such "any and all" language in a release not ambiguous). Finally, the consideration given to Mount for signing the release was greater than what Mount would have received had he not signed the waiver; namely, the Village dropped disciplinary proceedings against Mount and limited the amount of information about his employment with the Village that it would release to potential employers. Thus, at least seven of the eight *Pierce* factors weigh in Defendants' favor, suggesting that Mount should be held to the release.

Although the *Pierce* factors lean heavily in Defendants' favor, Mount alleges that he was fraudulently induced by Defendants to sign the release.[1] Specifically, Mount alleges that he

---

[1]The analysis of whether Defendants fraudulently induced Mount into signing the release is related to whether Defendants engaged in improper conduct to obtain the release under the

6

signed the release not knowing that the facts underlying the criminal charges filed against Bradley would differ from Chief Jones' account of the Bradley incident to the Board. Mount believes that the charges against Bradley were inconsistent with the Village's presentation to the Board that Mount had unlawfully and unjustifiably fired his weapon. (R. 25, Pl.'s Mem. at 5-6.)

To prove that he was fraudulently induced into signing the release, Mount must show: (1) that Defendants made a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the party resulting from such reliance. *Havoco of Am., Ltd. v. Sumitomo Corp. of Am.*, 971 F.2d 1332, 1341 (7th Cir. 1992); *see also Regensburger v. China Adoption Consultants*, 138 F.3d 1201, 1207 (7th Cir. 1998).

Mount cannot show that he was fraudulently induced by the Village into signing the release. First, Defendants did not necessarily make a false statement when they told the Board that Mount unlawfully fired his gun. The Village's complaint to the Board alleged that Mount violated Village policy "by firing at a moving vehicle when it was not necessary to prevent a person's death or great bodily harm" and by "using deadly force when he could not have reasonably believed that such force was necessary to prevent imminent death or great bodily harm." (R. 4, Am. Compl., Ex. B, ¶ 17.) In the criminal case against Bradley, the counts alleged that "Ofc. Mount & Sgt. Moore [were] in immediate apprehension of receiving a battery" and that "Ofc. Mount and Sgt. Moore [were] standing in front of the truck in an attempt to secure the defendant's arrest." (*Id.* at 6.) The Village's complaint against Mount and the charges against Bradley are not inconsistent; the Village's complaint to the Board alleged that Mount did not

---

*Pierce* test. If Defendants used fraud to obtain Mount's consent to the release, then they also engaged in improper conduct; therefore, the Court will analyze these issues concurrently.

need to fire the gun because force was not needed to prevent imminent death or great bodily harm. By comparison, the charges against Bradley do not allege that imminent death or great bodily harm was about to occur; rather, they allege a battery. Because the two accounts of the Bradley incident are not inconsistent, Defendants did not make a false statement of material fact when they alleged that Mount violated state law and local policy in firing his gun. Additionally, it must be noted that the charges against Bradley were filed by the State's Attorney's Office and not directly by the defendants.

Even if the Village did make a false statement to the Board that Mount's firing of his weapon was unjustified, Mount cannot be said to have relied on the Village's statement. A plaintiff cannot rely on misrepresentation when he has knowledge of the alleged fraud. *Havoco*, 971 F.2d at 1342 (7th Cir. 1992) (*citing Wilkinson v. Appleton*, 190 N.E.2d 727, 729 (Ill. 1963)). Mount believed that he was justified in firing his weapon from the time of the shooting and furthermore believed that the disciplinary charges presented to the Board were false from the time they were brought against him. His belief in the falsity of the Village's presentation to the Board cuts against the argument that he relied on the Village's statement that he unlawfully fired his weapon when signing the release. Because Mount cannot show that the Village made a false statement of material fact nor that he reasonably relied on the Village's statement, he cannot prove that he was fraudulently induced into signing the release.

Finally, Mount alleges that he was "forced into a corner" where his only real option was to sign the agreement. Mount, however, could have elected to continue with the disciplinary proceedings and contested that he unlawfully fired the weapon. One who has an alternative cannot later claim this type of duress as a defense to signing the agreement. *Pierce*, 65 F.3d at

569. Mount should not be allowed to claim that he was forced to sign the release because he could have fought the charges filed against him.

Mount knowingly and voluntarily executed a valid release. The Village did not fraudulently induce Mount into signing the agreement. The agreement releases any and all claims against the Village resulting from Mount's employment with and separation from the Village; thus, Mount's claims under 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution may not proceed. Accordingly, we grant Defendants' motion for summary judgment.

## CONCLUSION

For these reasons, we grant Defendants' motion for summary judgment. (R. 20-1.) The Clerk of the Court is instructed to enter judgment, pursuant to Federal Rule of Civil Procedure 58, in favor of the Village of South Elgin, Sergeant Michael Flaningam and Chief Larry Jones.

ENTERED:

Judge Ruben Castillo
United States District Court

Dated: February 4, 2003